IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARVIN C. ROBINSON, | ) | Case No. 1:18-cv-556 |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| ED SHELDON, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    Introduction

Petitioner, Marvin C. Robinson, an Ohio prisoner serving an aggregate sentence of 18 years to life for murder and aggravated robbery, seeks a writ of habeas corpus under 28 U.S.C. § 2254.  Robinson claims that his conviction and sentences in *State v. Robinson*, Cuy. Cty. Ct. Comm. Pl. Case No. CR-12-564924-B, violated his constitutional rights.  ECF Doc. 1. Respondent, Warden Ed Sheldon, filed a return of writ on May 23, 2018.  ECF Doc. 7. Robinson filed a traverse on August 1, 2018.  ECF Doc. 10.  And Warden Sheldon filed a response brief on August 3, 2018.  ECF Doc. 11.  This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Robinson's petition.[1]  Because Robinson's claims are procedurally defaulted, non-cognizable, and/or meritless, I recommend that the Court deny Robinson's petition for writ of habeas corpus.

---

[1] Chief Judge Patricia A. Gaughan also issued a differentiated case management initial order for administrative track cases reflecting the automatic order of reference.  ECF Doc. 2.

## II.     State Court History

### A.     State Trial Court, Case No. CR-12-564924

On August 3, 2012, a Cuyahoga County, Ohio, grand jury indicted Robinson on: one count of aggravated murder (purposely causing death, with prior calculation and design) in violation of Ohio Rev. Code § 2903.01(A) ("Count 1"); one count of aggravated murder (purposely causing death, while committing, attempting to commit, or while fleeing after committing or attempting to commit aggravated robbery) in violation of Ohio Rev. Code § 2903.01(B) ("Count 2"); one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(3) ("Count 3"); one count of felony murder (based on felonious assault) in violation of Ohio Rev. Code § 2903.02(B) ("Count 4"); and one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) ("Count 5").  ECF Doc. 7-1 at 4-6.  Specifically, the indictment alleged that "on or about July 16, 2012," Robinson and his codefendant Charles Harris committed felonious assault against Michael Morgan during a robbery and that Morgan died as a proximate result of that serious physical harm.  ECF Doc. 4-6.

Robinson's trial began on March 19, 2013.  ECF Doc. 7-2 at 83.  After jury selection, the court explained several rules to the jury.  ECF Doc. 7-3 at 50-56.  The court specifically directed the jurors to "refrain from outside investigation."  Id. at 52.  The defense rested its case on March 22, 2013.  ECF Doc. 7-5 at 154-55.  Thereafter, the court gave the following relevant instructions to the jury:

> [I]n strict keeping with your oaths you must refuse absolutely to have your judgment influenced by sympathy, bias or prejudice either for or against the defendant or the state of Ohio.  Your only concern is to decide the facts and whether they prove the offenses or any one of them under the indictment in this case.
>
> * * *

2

[Y]ou must base your conclusions only upon evidence introduced at trial.

ECF Doc. 7-5 at 155-58.  Robinson did not object to the instructions.  ECF Doc. 7-5 at 182.

After closing arguments, the jury deliberated for the afternoon until 4:30 PM, and the court released them for the weekend.  ECF Doc. 7-6 at 58-59.  On the morning of March 25, 2013, one of the prosecutors informed the court that he suspected a juror might have viewed his LinkedIn profile.  Id. at 60-61.  The prosecutor said that he did not know which juror might have viewed his profile because he only received notice that a "senior analyst" at a jewelry company had viewed his profile, and two jurors worked for that company.  Id. at 62-63.  Upon questioning, Juror No. 12 informed the court that she had "Googled" the prosecutor's names and saw one LinkedIn profile.  Id. at 75-76.  Juror No. 12 explained that she "was just curious if [she] got the spelling of the names correct," and affirmed that she did not send any messages to the prosecutor or do any other research related to the case.  Id. at 77-78.  She also said that her activity had not affected any deliberations or any of her positions on anything, and that she would be fair to both Robinson and the government.  Id. at 83-84.  The government asked the court to replace Juror No. 12, and Robinson asked that Juror No. 12 remain on the case.  Id. at 87-88.  The court agreed with Robinson.  Id. at 89.

Later that afternoon, the jury sent the court a note stating, "[W]e are hung on three counts.  What is our course of action?"  Id. at 91.  The government asked the court to "let them keep deliberating" because it was too early in deliberations for a *Howard* instruction.[2]  Id. at 91.

---

[2] A *Howard* instruction is the common name for a supplemental instruction Ohio courts give a jury when it informs the court that its deliberations are in deadlock.  *See State v. Howard*, 42 Ohio St. 3d 18 (Ohio 1989) (approving a charge that directs jurors in favor of acquittal to consider that their doubt might be unreasonable and directing jurors in favor of conviction that they might find reasonable doubt).  The charge is similar to the supplemental instruction approved by the U.S. Supreme Court in *Allen v. United States*, 164 U.S. 492 (1896) (approving an instruction that encourages jurors in the minority to reconsider their position in the majority's favor).

Robinson, through counsel, asked the court to give a *Howard* instruction, but also to direct the jury to no longer address the count on which it had reached a verdict.  *Id.* at 92-93.  The court decided to take a "middle ground," and instructed the jury that:

> It appears you have reached an agreement on one count.  So your deliberations on that count should be undisturbed and are over.
>
> As for the [other] three counts, I just want you to know that your situation is not all that unusual.  Based on the time that you've been deliberating, I think that a little more effort is in order in this particular case.  However, that effort probably shouldn't be made this afternoon.  If you have an evening to reflect and rest, you may come in tomorrow morning prepared to have productive discussions.

*Id.* at 95-96.  Robinson objected to the instruction.  *Id.* at 94, 96.

On the morning of March 26, 2013, Juror No. 5 sent the court a note stating, "Can I get replaced for this case? . . . I feel like I have made good points and due to lack of evidence, I cannot make a – find him guilty."  *Id.* at 97.  Robinson, through counsel, asked the court not to excuse Juror No. 5.  *Id.* at 98.  Robinson's counsel also said, "[O]bviously he has said what his verdict is and so they're hung on those so I would think at this point it would be appropriate to declare a mistrial."  *Id.* at 98.  The court directed Juror No. 5 that he could not be excused and gave a full *Howard* instruction.  *Id.* at 100-04.  Robinson, through counsel, stated that he had no objection to the instruction as given.  *Id.* at 105.

The jury also asked two clarification questions.  First, the jury asked, "If the defendant is thought to be complicit in the felonious assault which leads to death, then, by law, is he complicit to the charge of murder?"  *Id.* at 107.  The court proposed to instruct the jury that "one of the elements they must find on Count 4 beyond a reasonable doubt is that the defendant did commit or attempt to commit the felonious assault."  *Id.* at 107.  Robinson, through counsel, said that the proposed instruction would be "partially correct," and argued that it would not be inconsistent for the jury to find Robinson guilty on Count 4, but not guilty of felonious assault.  *Id.* at 108.

Robinson asked the judge to say only that, "You have all of the instructions necessary." *Id.* at

108-09.  The court instructed the jury:

> If you find beyond a reasonable doubt on Count 5, felonious assault, that the
> defendant as either a principal offender or an aider and abettor of a principal
> offender knowingly caused serious physical harm to Michael Morgan, then you
> have found one of the elements of Count 4, murder.  However, to conclude your
> deliberations on Count 4, you must then consider the separate element in Count 4
> of whether beyond a reasonable doubt the death was caused as a proximate result
> of the felonious assault.  As already instructed, the defendant is charged on all
> counts as both a principal offender and as a person complicit by having . . . aided
> or abetted a principal offender.

*Id.* at 117.

Second, the jury asked, "Does aiding and abetting in a robbery constitute aiding and

abetting in the murder?"  *Id.* at 110.  Robinson's counsel again stated that he would ask the court

for a "vague [instruction] like you have all of the instructions you need, please continue to work

with those instructions in mind."  *Id.* at 110.  The court gave a written, proposed instruction to

counsel, and Robinson's counsel objected to it.  *Id.* at 112-13.  Robinson's counsel explained:

> my interpretation [of the questions] is that individual jurors are asking specific
> questions so that they can then use that to counter what juror number five is
> thinking, and I think at this time, based upon the fact that he said he found the
> defendant not guilty, that again, a mistrial should be granted on the counts that
> they're hung.

*Id.* at 114.  The court noted Robinson's objection, but determined that the court's role was to

give the jurors all the information they asked for, and that doing so would not demonstrate

partiality or abet one juror's arguments against another.  *Id.* at 115-16.  The court instructed the

jury that:

> My answer to this question assumes that you are referring to the aggravated
> murder charge in Count 2.  "If you find beyond a reasonable doubt that the
> defendant aided and abetted a principal offender on Count 3, aggravated robbery,
> you must still separately find the other elements of Count 2, aggravated murder,
> beyond a reasonable doubt before finding him guilty of Count 2."

If by this question you are referring to the murder charge in Count 4, then you are
instructed that "The commission of, or attempt to commit aggravated robbery is
not an element of Count 4."

*Id.* at 118-19.

On March 26, 2013, the jury found Robinson guilty of Count 3 (aggravated robbery),

Count 4 (felony murder), and Count 5 (felonious assault) and not guilty of Count 2 (aggravated

murder).  The court granted Robinson's Rule 29 motion and dismissed Count 1 (aggravated

murder).  ECF Doc. 7-1 at 23.  At sentencing, Robinson's counsel asked the court to merge

Counts 3, 4, and 5 as allied offenses.  ECF Doc. 7-6 at 143-46.  The court determined that Count

3 (aggravated robbery) was not an allied offense of similar import to Counts 4 and 5, but that

Counts 4 and 5 were allied offenses to each other. ECF Doc. 7-1 at 24; ECF Doc. 7-6 at 155.

The court sentenced Robinson to the indeterminate, mandatory minimum sentence of 15 years to

life imprisonment on Count 4 and a consecutive 3-year prison term on Count 3, for an aggregate

sentence of 18 years to life imprisonment.  ECF Doc. 7-1 at 24

**B.      Direct Appeal, Case No. CR-564924**

On May 22, 2013, Robinson, through new counsel, filed a notice of appeal to the Ohio

Court of Appeals.  ECF Doc. 7-1 at 26.  Robinson raised five assignments of error, two of which

are relevant to the issues remaining in Robinson's petition:

ASSIGNMENT OF ERROR II:
Trial court violated Mr. Robinson's right to a fair and impartial jury by failing to
provide the clarification it requested; by interfering with deliberations and by
failing to grant a mistrial after the jury twice claimed it could not reach a verdict.

* * *

ASSIGNMENT OF ERROR V:
The trial court violated Mr. Robinson's right to be free from double jeopardy
when it concluded that the aggravated robbery count did not merge with the
murder (B) and felonious assault counts and sentenced him on both counts.

6

*Id.* at 31-32, 35, 50-58, 64-67.[3]  In his second assignment of error, Robinson asserted that the trial court deprived him of a fair and impartial jury trial when it: (1) failed to provide sufficient clarification to the jury; (2) interfered with the jury deliberations; and (3) failed to declare a mistrial.  *Id.* at 50-58.  Specifically, Robinson argued that the court should have given a *Howard* charge when the jury informed the court that it was hung after a day and a half of deliberations.  *Id.* at 50.  Further, Robinson asserted that the court should have declared a mistrial because the jury had indicated it was deadlocked multiple times, one juror was caught doing outside research, and another juror asked to be excused because he felt that other jurors were not listening to him.  *Id.* at 56-58.  Robinson also argued that the court's instructions – especially the instructions to stop deliberating on the count they had decided and to go home and "reflect" on the case – were improper, incorrect, or confusing.  *Id.* at 51-56.  In his fifth assignment of error, Robinson asserted that the trial court should have merged his aggravated robbery conviction with his murder conviction under Ohio's allied offense laws because "both offenses share the same element of physical harm, and on these facts, the animus for each offense was the same."  *Id.* at 64-65.

On July 3, 2014, the Ohio Court of Appeals affirmed Robinson's convictions and sentences.  *Id.* at 102-24.  The Court of Appeals overruled Robinson's second assignment of error.  *Id.* at 113-18.  The court determined that any error in instructing the jury to stop deliberating on the fourth count was invited error, and not subject to appellate review.  *Id.* at 114-15.  The court reviewed for plain error whether the court improperly instructed the jury to

---

[3] Robinson also argued that: (1) the trial court improperly admitted the alleged murder weapon into evidence (Assignment of Error I); (2) the trial court improperly failed to give an instruction requiring unanimity regarding whether Robinson was a principal offender or an accomplice in the alleged offenses (Assignment of Error III); and (3) counsel was constitutionally ineffective for failing to challenge the improper admission of evidence and lack of unanimity instructions (Assignment of Error IV).  ECF Doc. 7-1 at 31-32, 35, 46-49, 59-64.

"reflect" on the case because Robinson did not object to the instruction at trial. *Id.* at 115. Nevertheless, the Court of Appeals found that the trial court did not err, plainly or otherwise, because: (1) jurors are allowed to privately reflect on a case as long as they do not discuss it with anyone else; and (2) Robinson did not show that the instruction prejudiced him. *Id.* at 115. The court also determined that the trial court gave adequate and correct statements of law in response to the jury's clarification questions and did not mislead or confuse the jury. *Id.* at 115-17. Further, the court held that the trial court did not err by not dismissing Juror No. 12 because Robinson: (1) invited any error when he agreed Juror No. 12 should remain in the jury; and (2) did not show that Juror No. 12's viewing of the prosecutor's LinkedIn profile prejudiced him. *Id.* at 117-18. Thus, the Court of Appeals concluded that the trial court did not interfere with jury deliberations or otherwise deprive Robinson of a fair jury trial. *Id.* at 113-18.

The Ohio Court of Appeals also overruled Robinson's fifth assignment of error. *Id.* at 120-23. The court determined that Robinson's aggravated robbery conviction did not merge with the other convictions because: (1) Robinson and Harris used force far in excess of the force required to subdue and rob Morgan; and (2) Robinson did not go through Morgan's pockets until Morgan was "already lifeless on the ground." *Id.* at 122-23. Thus, the Court of Appeals concluded that the trial court properly determined that Robinson's aggravated robbery and other convictions were not "allied offenses of similar import." *Id.* at 123.

### C.      Appeal to the Ohio Supreme Court, Case No. 2014-1442

On August 18, 2014, Robinson appealed to the Ohio Supreme Court. ECF Doc. 7-1 at 125-26. Robinson's memorandum in support of jurisdiction raised four propositions of law:

1.  Responding to juror requests for clarification with incorrect statements of law create[d] confusion and violate[d] the accused's right to a fair and impartial jury.

2. A mistrial is warranted whe[n], during deliberations, a juror conduct[ed] outside research and the jury twice indicate[d] that it [could not] reach a verdict.[4]

3. Failure to request a specific unanimity instruction regarding the jury's verdicts on accomplice liability constitute[d] ineffective assistance of counsel.

4. Aggravated robbery and Murder(B) [were] allied offenses that must [have] merge[d] when they [were] committed by the same conduct.

*Id.* at 128, 132-40.  On January 28, 2015, the Ohio Supreme Court declined jurisdiction.  *Id.* at 179.  Robinson did not appeal to the U.S. Supreme Court.

### D.     Petition to Vacate or Set Aside Conviction or Sentence

On December 2, 2013, Robinson filed a petition to vacate or set aside his conviction or sentence.  ECF Doc. 7-1 at 180-82.  Robinson's petition raised three issues, none of which are related to the issues in his federal habeas corpus petition.  *See id.* at 181.  The trial court denied Robinson's petition on March 10, 2017.  *Id.* at 188-89.  Robinson did not appeal.  *See generally* Docket for Cuy. Cty. Ct. Comm. Pl. Case No. CR-12-564924-B (no notice of appeal filed after order denying petition to vacate).

### III.    Federal Habeas Corpus Petition

On March 9, 2018, Robinson filed his petition for writ of habeas corpus.  ECF Doc. 1. Robinson's petition raises four grounds for relief:

GROUND ONE:  The trial court violated petitioner's right to a fair trial and impartial jury when it responded to his jury's requests for clarification by provid[ing] it with incorrect statements of the applicable law.

GROUND TWO:  The trial court violated Mr. Robinson's right to a fair and impartial jury by failing to declare a mistrial after numerous irregularities involving the jurors and the jury twice indicated that it was deadlocked.

---

[4] Robinson also argued under this heading that the trial court violated his rights by not declaring a mistrial when its "instructions blurred any distinction between the conduct of a principal offender and an accomplice."  ECF Doc. 7-1 at 135.

**GROUND THREE:** Trial counsel was ineffective for failing to request specific unanimity instruction for the jury's verdict on accomplice liability.

**GROUND FOUR:** The trial court violated the prohibition against double jeopardy when it concluded that the aggravated robbery count did not merge with the murder (B) and felonious assault counts, and sentenced him consecutively on both.

*Id.* at 6-11. Robinson's traverse withdrew his Ground One and Ground Three claims. ECF Doc. 10 at 9 n.1. Accordingly, only Robinson's Ground Two and Ground Four claims remain.

## IV. Applicable Habeas Corpus Legal Framework

### A. AEDPA Review

"Federal habeas review . . . exists as 'a guard against extreme malfunctions in the state criminal justice systems" and is not simply an extra layer of appellate review. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). If the petitioner fairly presented his federal claims in state court but the state courts did not reach the merits of those claims, the federal habeas court may review such claims *de novo*.[5] *Gumm v. Mitchell*, 775 F.3d 345, 360 (6th Cir. 2014). When the state courts decided a petitioner's federal claims on the merits, however, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

AEDPA imposes a highly deferential standard that requires federal courts to give the state courts the benefit of the doubt. *Lindh*, 521 U.S. at 333 n.7; *Renico v. Lett*, 559 U.S. 766, 773 (2010). Under that standard, habeas relief is available only when the petitioner shows that the state-court decision: (1) was contrary to, or an unreasonable application of, clearly established federal law; or (2) an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 185 &

---

[5] *De novo* simply means the court would take a fresh look at the issue, and not be limited in its review by an earlier finding by another court. *See Gumm*, 775 F.3d at 360.

n.7 (explaining that "evidence introduced [for the first time] in federal court has no bearing on" habeas review).  "Reasonableness" is not a measure of the federal court's confidence in the state court decision; rather, it is an objective standard measuring whether the decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any reasonable possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011).  "Clearly established federal law" includes only the governing legal principles established by the U.S. Supreme Court at the time the state-court decision was issued.  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003); *see also White v. Woodall*, 572 U.S. 415, 420 (2014) ("Clearly established federal law . . . includes only the holdings, as opposed to the dicta of [the Supreme] Court's decisions.").  And state court factual determinations are presumed correct, unless the petitioner produces clear and convincing evidence showing that the state court made a clear factual error.  *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003); *Burt v. Titlow*, 571 U.S. 12, 18 (2013); 28 U.S.C. § 2254(e)(1).  "This standard . . . is difficult to meet."  *White*, 572 U.S. at 419 (quotation omitted).

### B.    Exhaustion and Procedural Default

Before a federal court may even reach the merits of a habeas petition, it must determine whether the petitioner complied "with two procedural requirements, both grounded in the interests of comity and federalism."  *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. 2019).  "First, the petitioner must [have] exhaust[ed] all available opportunities to pursue his claim in state court."  *Id.; see also Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982) (noting that exhaustion does not require a petitioner to pursue clearly futile state remedies); *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("[S]tate-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability.").

11

Second, the petitioner's federal law claims must not be *procedurally defaulted*.  In other words, the court must determine whether the petitioner "followed the state's [rules] for presenting his claim in state court."  *Gerth*, 938 F.3d at 827 (citing *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)).  Generally, "a federal court usually may not review a state prisoner's habeas claim if: (1) the prisoner broke a state procedural rule; (2) the state court enforced the rule; and (3) the [failure to follow the rule] was an adequate and independent ground for denying relief."  *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).  Nevertheless, a petitioner may overcome his *procedural default* and obtain federal court review if he can show: "(1) good cause for the default and actual prejudice from the claimed error; or (2) that [the petitioner] is actually innocent of the crime."  *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)).  Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and must be supported with "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### C.    Cognizability

The petitioner's must also present a *cognizable issue*, meaning that it must allege a violation of the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2241.  Otherwise, the federal habeas court cannot review the claim.  *See Estelle*, 502 U.S. at 68.  Violations of state constitutions, laws, or rules are not *cognizable*.  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quoting *Estelle*, 502 U.S. at 67).  A petitioner cannot turn a state-law claim into a constitutional claim merely by alleging that the failure to follow the state rule violated his due process rights.  *See Rivera v. Illinois*, 556 U.S. 148, 158 (2009) (holding that the Due Process Clause does not require strict observance of state

procedural rules).  Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction," binds federal habeas courts. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68).  Nevertheless, a state-court ruling on a state-law issue may violate a petitioner's due process rights when it made the underlying proceeding "fundamentally unfair."  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  That is, when the state-court ruling undermined the "'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling*, 493 U.S. 342, 352 (1990) (internal citations omitted).  Courts have defined such violations "very narrowly."  *Id.*

## V.     The Facts

Analysis of Robinson's petition begins with the facts recited in the Ohio Court of Appeals' opinion on direct appeal.  These factual findings are presumed correct unless Robinson rebuts them with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Wiggins*, 539 U.S. at 528-29; *Burt*, 571 U.S. at 18.  The Ohio Court of Appeals found the following facts:

> {¶ 17}  After several hours of deliberations, the jury informed the court that it was "hung" on three counts, and the defense requested a *Howard1* charge.  The court declined to give a *Howard* charge but instructed the jury to continue deliberating. The next day, Juror No. 5 asked to be replaced, stating "I feel like I have good points and due to lack of evidence, I cannot make a - find him guilty."  In discussing the note, both the state and defense agreed that the juror should not be excused.

> {¶ 18}  The defense, however, requested a mistrial on grounds that the juror's comments indicated the jury was hung.  The court refused to grant a mistrial and gave the jurors a *Howard* charge.  Upon request, the court also gave the jury a written *Howard* charge.  After further deliberations, the jury found Robinson not guilty on the remaining aggravated murder charge, but convicted him of murder, aggravated robbery, and felonious assault.

{¶ 19} At sentencing, the court concluded, over defense objection, that the aggravated robbery and murder charges were not allied offenses. The court sentenced Robinson to 15 years to life for murder and three years for aggravated robbery to be served consecutive to the 15 years on the murder. The court did not sentence Robinson on the felonious assault charge because it merged with the murder charge.

\* \* \*

{¶ 32} At approximately 4:00 p.m. on the jury's second day of deliberations, it sent out a note requesting direction because it was hung on three counts. Rather than give the jury a *Howard* charge, as the defense requested, the court instructed the jury:

> The word "hung" in reference to deliberations is generally used to mean we cannot reach an agreement on three counts. I will assume that's what you mean here.
>
> First things first. It appears you have reached an agreement on one count. So your deliberations on that count should be undisturbed and are over. As for the three counts, I just want you to know that your situation is not all that unusual. Based on the time that you've been deliberating, I think that a little more effort is in order in this particular case. However, an effort probably shouldn't be made this afternoon. If you have an evening to reflect and rest, you may come in tomorrow morning prepared to have productive discussions.

{¶ 33} Robinson's trial counsel specifically asked the court to instruct the jury not to revisit the count upon which they had reached a verdict because they believed the jury had reached a not guilty verdict. Thus, any error in providing this instruction is invited error.

{¶ 34} . . . Robinson's trial counsel did not object to this instruction and has therefore forfeited all but plain error. Further, jurors are not prohibited from privately reflecting on the case at home as long as they do not discuss the case with anyone. Robinson fails to demonstrate how he was prejudiced by this innocuous statement.

\* \* \*

{¶ 36} In the first question, the jury asked: "If the defendant is thought to be complicit in the felonious assault, which leads to death, then by law, is he complicit to the charge of murder?" . . .

{¶ 37} In the second question, the jury asked: "Does aiding and abetting in a robbery constitute aiding and abetting in the murder?" . . .

{¶ 38} A "yes" or "no" answer would not have provided an adequate response to these questions. Instead, the court rephrased its earlier instructions on the elements of each of the crimes. The court correctly explained that a guilty finding of felonious assault does not automatically indicate the defendant is also guilty of murder. The court explained that to find Robinson guilty of murder, they had to find the additional element of proximate cause.

{¶ 39} Similarly, the court explained that a guilty finding on the aggravated robbery charge is one element of the aggravated murder charge and that they would still have to find the other elements of aggravated murder to find Robinson guilty of that charge. Finally, the court correctly stated that aggravated robbery is not an element of murder. Thus, the court's responses were correct statements of the law, and there was nothing unreasonable or misleading about them.

{¶ 40} Robinson next argues he was deprived of his right to a fair trial because one of the jurors viewed one of the prosecutor's LinkedIn pages. After questioning the juror, both parties indicated they were satisfied that the juror could still be fair and impartial to the case. The state nevertheless suggested the juror be removed in an abundance of caution, but the defense indicated they did not want the juror to be removed. Thus, the defense invited any error caused by the juror's continued participation in the case. . . . Moreover, there is no evidence to suggest that Robinson was prejudiced by the juror's look at the prosecutor's LinkedIn page.

{¶ 41} Having determined that the trial court did not interfere with jury deliberations, provided appropriate answers to the jury's questions, and Robinson was not prejudiced by the juror's view of the prosecutor's LinkedIn page, we overrule the second assignment of error.

* * *

{¶ 56} In this case, Morgan was severely beaten and then robbed. Several courts, including this court, have held that, "where the force used to effectuate an aggravated robbery is far in excess of that required to complete the robbery, or where the circumstances suggest that a separate intent to kill existed, the offenses of aggravated robbery and murder do not merge."

{¶ 57} [Forensic pathologist] Dr. [Joseph] Felo testified that Morgan sustained a massive skull fracture that rendered him unconscious and unable to defend himself. Other witnesses testified that Robinson and Harris continued to kick and beat Morgan after he was unresponsive. In addition, [witness Anthony] Fields can be heard on the recording of the 911 call, that was played at trial, telling the dispatcher he believed Morgan was killed. Thus, it was evident to witnesses that the defendants used excessive force to subdue Morgan. Furthermore, it was not until Morgan was already lifeless on the ground that witnesses observed Robinson go through his pockets, as if the robbery was an afterthought. Under these

circumstances, the murder and aggravated robbery offenses were not allied offenses of similar import.

ECF Doc. 7-1 at 109-123 (citations omitted).

## VI.    Analysis

### A.    Ground Two – Failure to Declare Mistrial

In his Ground Two claim, Robinson argues that the Ohio Court of Appeals misapplied clearly established federal law when it did not hold that the trial court abused its discretion in declining to declare a mistrial.  ECF Doc. 1-2 at 8-9.  Robinson asserts that the trial court should have declared a mistrial because: (1) one juror was caught doing outside research; (2) the jury twice indicated that it was deadlocked; (3) one juror said that he felt that no other jurors were listening to him; and (4) the trial court's "instructions blurred any distinction between the conduct of a principal offender and an accomplice." *Id.* at 9.  In support of his argument, Robinson states that the U.S. Supreme Court has held: (1) that "a verdict should be the product of the conviction of the minds of the jurors, not of their 'suffering of mind or body,' [in] *Arizona v. Washington*, 434 U.S. 497, 510[] n.7 (1978);" and (2) that "[t]he decision to declare a mistrial is left to the 'sound discretion' of the judge, but 'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious cases' [in] *Renico v. Lett*, 559 U.S. 776, 773-74 (2010)." *Id.* at 8.

Warden Sheldon responds that Robinson's Ground Two Claim is not cognizable because the issue of whether a trial court abused its discretion by failing to declare a mistrial does not involve a constitutional right.  ECF Doc. 7 at 28.  Furthermore, Warden Sheldon asserts that – even if Robinson's claim is cognizable – Robinson could not show that the trial court violated his constitutional rights by declining to declare a mistrial because: (1) trial counsel never moved for

16

a mistrial; and (2) the Ohio Court of Appeals reasonably found that the court's instructions were accurate and not misleading. *Id.* at 27-33.

In his traverse, Robinson contends that challenges to a trial court's jury instructions are cognizable on federal habeas review when the instructions were "so erroneous that they can be said to have 'infected the entire trial.'" ECF Doc. 10 at 9-10. He also asserts that the trial court's decision not to declare a mistrial is cognizable on habeas review because it affected his "right to due process and a fair trial." *Id.* at 12-14. Warden Sheldon replies that Robinson's jury-instructions argument is effectively a new claim not presented in his petition. ECF Doc. 11 at 2-3. Moreover, Warden Sheldon argues that Robinson challenged only one jury instruction – the *Howard* instruction – before the Ohio Court of Appeals and that the court reasonably found that the trial court did not commit plain error in issuing that instruction. *Id.* at 3-4.

### 1. Forfeiture

As Warden Sheldon correctly notes, a habeas petitioner forfeits any argument not raised in his petition which is presented for the first time in his traverse. *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) ("Because the . . . argument was first presented in [petitioner's] traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it." (citations omitted)); ECF Doc. 11 at 2-3. However, Robinson raised the gravamen of his argument – that the allegedly confusing clarification instructions about accomplice liability warranted mistrial – in his petition. ECF Doc. 1-2 at 9. Although Robinson's traverse provides greater detail to that argument, He has not improperly expanded the claim by challenging instructions unrelated to the jury's understanding of accomplice liability. *See* ECF Doc. 10 at 9-14. Further, to the extent Warden Sheldon seeks to foreclose this court's consideration of a standalone challenge to the court's clarification

instructions, unfiltered through the lens of whether the trial court should have declared a mistrial, his argument misses the mark.  Robinson raised such a claim in Ground One of his petition, but he expressly withdrew it in his traverse.  ECF Doc. 1 at 6; ECF Doc. 1-2 at 6-8; ECF Doc. 10 at 9 n.1.  Accordingly, the court should not disregard as forfeited Robinson's argument that the Ohio Court of Appeals should have held that the trial court erred in failing to declare a mistrial based on, *inter alia*, the allegedly confusing jury instructions about accomplice liability.

### 2.  Procedural Default

Robinson's argument that the trial court violated his constitutional rights when it failed to declare a mistrial based on Juror No. 12's outside research is procedurally defaulted.  Here, Robinson never argued before the trial court that Juror No. 12's outside research justified declaring a mistrial.  *See* ECF Doc. 7-6 at 60-89.  In fact, he did the opposite of asking for a mistrial based on Juror No. 12's outside research when he urged the court to keep Juror No. 12 on the case.  ECF Doc. 7-6 at 87-88.  When Robinson argued on direct appeal that the trial court's decision to keep Juror No. 12 on the case rendered his trial unfair and warranted mistrial, the Ohio Court of Appeals determined that review was barred under Ohio's invited error doctrine and because Robinson did not show prejudice.  *Benton*, 942 F.3d at 307; *Gerth*, 938 F.3d at 827; ECF Doc. 7-1 at 117-18.  And Robinson's invited error was an independent and adequate state grounds for denying relief.  *Benton*, 942 F.3d at 307; *see Fields v. Bagley*, 275 F.3d 478, 486 (6th Cir. 2001) ("When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error.").  Thus, Robinson's argument that the trial court should have declared a mistrial based on Juror No. 12's outside research is procedurally defaulted.  *Benton*, 942 F.3d at 307; *Gerth*, 938 F.3d at 827.

Robinson also cannot overcome his procedural default.  Robinson does not argue that he had good cause for inviting any alleged error regarding Juror No. 12 remaining on the jury. *Benton*, 942 F.3d at 307; *Sawyer*, 505 U.S. at 338-39; *see generally* ECF Doc. 1-2; ECF Doc. 10. Moreover, Robinson cannot show that the trial court's decision to keep Juror No. 12 on the jury prejudiced him because: (1) he asked for Juror No. 12 to stay on the case; (2) the court specifically instructed the jurors to base their decision only on the evidence presented at trial; and (3) the court ensured that Juror No. 12's research was not related to the merits of his case and did not affect Juror No. 12's opinions.  *Benton*, 942 F.3d at 307; *Sawyer*, 505 U.S. at 338-39; ECF Doc. ECF Doc. 7-6 at 158; ECF Doc. 7-6 at 75-78, 83-84, 87-88.  Moreover, Robinson has not produced any new evidence demonstrating that he is factually innocent.  *Benton*, 942 F.3d at 307; *Sawyer*, 505 U.S. at 338-39; *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 324.  Thus, Robinson cannot overcome his procedural default of his claim related to Juror No. 12's outside research.

Robinson's claims that the trial court violated his rights by not declaring a mistrial based on the allegedly confusing jury instructions and the jury's statements that it was deadlocked, however, are not procedurally defaulted.  Here, Warden Sheldon asserts that Robinson did not move for a mistrial before the trial court, but a review of the record shows that Robinson twice asked the court to declare a mistrial – once after Juror No. 5 asked to be excused and once after the jury issued its clarification questions – because he believed the jury had demonstrated it was deadlocked.  ECF Doc. 7-6 at 98, 114.  Moreover, Robinson provided the Ohio Court of Appeals and Ohio Supreme Court a fair opportunity to reach these issues by presenting them on direct appeal to the Court of Appeals and in his memorandum in support of jurisdiction before the Ohio Supreme Court.  *See Williams v. Anderson*, 460 F.3d 789, 806 (indicating that a petitioner avoids

procedural default when he "fairly presents" his claim in the state's ordinary review process); ECF Doc. 7-1 at 31-32, 35, 50-58, 128, 135-36.

Accordingly, Robinson's Ground Two claim is procedurally defaulted in part, with regard to his sub-claim that the trial court violated his rights by not declaring a mistrial when Juror No. 12 did outside research. Robinson's Ground Two claim, however, is not procedurally defaulted with regard to his sub-claims based on the jury's indications that it was deadlocked and the trial court's allegedly confusing instructions. I recommend that the court deny in part Robinson's Ground Two claim as procedurally defaulted.

### 3. Cognizability

Robinson's Ground Two claim – including his sub-claim related to Juror No. 12's outside research – is not cognizable. Under Ohio law, the decision whether to grant or deny a motion for mistrial rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St. 3d 173, 182 (1987). And a trial court's discretionary decision is generally a state-law issue. *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) ("[A] state trial court's alleged abuse of discretion, without more, is not a constitutional violation."). Thus, this court has consistently rejected habeas claims challenging a state trial court's failure to declare a mistrial as non-cognizable on federal habeas review. *See, e.g.*, *Kyle v. Gansheimer*, No. 5:11-cv-1395, 2013 U.S. Dist. LEXIS 171623, at *50-52 (N.D. Ohio, Oct. 3, 2013), *adopted by* 2013 U.S. Dist. LEXIS 171620 (N.D. Ohio, Dec. 4, 2013); *Adams v. Bunting*, No. 1:14-cv-1450, 2015 U.S. Dist. LEXIS 107948, at *21-22 (N.D. Ohio, July 28, 2015), *adopted by* 2015 U.S. Dist. LEXIS 147601 (N.D. Ohio, Oct. 30, 2015); *Pryor v. Miller*, No. 5:15-cv-932, 2017 U.S. Dist. LEXIS 192612, at *18-19 (N.D. Ohio, Oct. 26, 2017), *adopted by* 2017 U.S. Dist. LEXIS 192614 (N.D. Ohio, Nov. 21, 2017);

*Hickman v. Bradshaw*, No. 5:16-cv-1077, 2017 U.S. Dist. LEXIS 222699, at *33-34 (N.D. Ohio, Nov. 30, 2017), *adopted by* 2019 U.S. Dist. LEXIS 34977 (N.D. Ohio, Mar. 5, 2019).

Further, Robinson's argument that the trial court's failure to declare a mistrial deprived him of his due process right to a fair trial is insufficient to convert his non-cognizable state-law claim into a constitutional claim. *Rivera*, 556 U.S. at 158. Robinson has not shown that any of the bases upon which he believes the trial court should have declared a mistrial are among the narrow list of circumstances which the Supreme Court has determined undermine "fundamental conceptions of justice" and render a trial fundamentally unfair. *Seymour*, 224 F.3d at 552; *Bugh*, 329 F.3d at 512; *Dowling*, 493 U.S. at 352; *Lockyer*, 538 U.S. at 71-72. Accordingly, Robinson's Ground Two claim does not allege a denial of fundamental fairness sufficient to convert his non-cognizable state-law claim into a cognizable due process claim. *Seymour*, 224 F.3d at 552; *Bugh*, 329 F.3d at 512; *Dowling*, 493 U.S. at 352.

I recommend that the court deny Robinson's Ground Two claim as non-cognizable.

### 4.    Merits

Even if we were to determine that Robinson's Ground Two claim alleged a denial of fundamental fairness sufficient to convert his non-cognizable state-law claim into a cognizable due process claim, it would still fail on the merits. Here, the question is not whether trial court should have declared a mistrial, but whether the appellate court's decision affirming the trial court's decision not to declare a mistrial was an unreasonable application of clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial[, but whether the

appellate court's decision] was 'an unreasonable application of . . . clearly established Federal law.'").

Robinson has not pointed to any Supreme Court decisions holding that the Constitution requires a trial court to declare a mistrial when a jury indicates that its deadlocked.  *See* ECF Doc. 1-2 at 8-9; ECF Doc. 10 at 9-14.  Instead, the cases Robinson has cited in his petition *caution* trial courts *against* declaring mistrials absent a *manifest necessity*.  *See* ECF Doc. 1-2 at 8 (citing *Arizona v. Washington*, 434 U.S. 497, 510 n.27 (1978); *Renico v. Lett*, 559 U.S. 766, 773-74 (2010)).[6]  Further, if anything, the trial court's decision to issue a *Howard* instruction to encourage continued deliberations instead of declaring a mistrial was *consistent* with the Supreme Court's holding in *Allen v. United States*, 164 U.S. 492 (1896) (approving an instruction that encourages jurors in the minority to reconsider their position in the majority's favor).  ECF Doc. 7-6 at 95-96, 100-04.  Similarly, Robinson's citations to U.S. Supreme Court cases indicating that jury's reliance on invalid instructions renders a verdict deficient are unavailing because this court is bound by the Ohio Court of Appeals finding that the trial court's instructions accurately stated Ohio law.  *Bradshaw*, 546 U.S. at 76; ECF Doc. 7-1 at 116-17; ECF Doc. 10 at 9 (citing *Stromberg v. California*, 283 U.S. 359 (1931); *Yates v. United States*, 354 U.S. 298 (1957)). Robinson also has not cited any Supreme Court decisions indicating that a juror's outside research, which seems to have been limited to determining the spelling of an attorney's name and did not affect the juror's judgment, requires a trial court to declare a mistrial.  *See* ECF Doc. 1-2 at 8-9; ECF Doc. 10 at 9-14.  Therefore, Robinson has not shown

---

[6] In *Renico*, the Supreme Court was actually confronted with an argument that a state trial court violated the petitioner's constitutional rights by *declaring* a mistrial.  559 U.S. at 773-74.  And, although the Supreme Court determined that a deadlocked jury *may* lead a trial court to determine that a mistrial is necessary, it did not mandate that a trial court declare a mistrial in such circumstances.  *Id.* at 775-76.

that the Ohio Court of Appeals' decision affirming the trial court's decision not to declare a mistrial was an unreasonable application of clearly established federal law.

Accordingly, even if the Court were to determine that Robinson's Ground Two claim is cognizable, I recommend that the court deny Robinson's Ground Two claim as meritless.

### B.      Ground Four – Failure to Merge Offenses for Sentencing

In his Ground Four claim, Robinson argues that the trial court violated his Double Jeopardy rights and Ohio's merger laws when it failed to merge his aggravated robbery conviction and murder conviction at sentencing.  ECF Doc. 1-2 at 10-12; ECF Doc. 10 at 14-15. Robinson asserts that the convictions should have merged because: (1) both aggravated robbery and murder include "serious physical harm" as an element; and (2) Robinson's conduct single act – taking Morgan's money – served as the basis for both convictions.  ECF Doc. 1-2 at 12-13; ECF Doc. 10 at 15.  Warden Sheldon responds that Robinson's claim is not cognizable because the federal court must defer to the state courts' interpretation of Ohio's merger law and because aggravated robbery and murder do not share the same elements.  ECF Doc. 7 at 39.  Further, Warden Sheldon argues that the Ohio Court of Appeals reasonably determined that the convictions did not merge.  *Id.* at 39-41.

#### 1.      Double Jeopardy Legal Standard

The U.S. Supreme Court has interpreted the Double Jeopardy Clause of the Fifth and Fourteenth Amendments to prohibit the imposition of multiple punishments for the *same offense*. *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)).  When a single act violates multiple state-law criminal statutes charged in a single case, the Double Jeopardy Clause protects defendants only against the imposition of a greater sentence than the state legislature intended.  *See id.* (citing *Albernaz v. United States*, 450 U.S. 333, 344

(1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)).  In other words, if the state legislature intended the multiple state-law violations to *merge* into a *single offense*, the imposition of cumulative sentences for the multiple state-law violations would run afoul of the Double Jeopardy clause.  *Cf. id.*

But how does a federal habeas court – which generally does not review matters of state law – determine whether the state legislature intended the state-law violations to merge into a single offense?  First, the federal habeas court must look to whether the state courts have interpreted the state legislature's intent.  *Cf. id.* at 697 ("'When evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent.'" (citing *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)).  If the state courts have done so – even if only on direct appeal of the challenged convictions – the federal habeas court must defer to that interpretation.  *Id.* (citing *Banner*, 886 F.2d at 780; *Bradshaw*, 546 U.S. at 76; *Jones v. Sussex I State Prison*, 591 F.3d 707, 710 (4th Cir. 2010)).  If not, the federal court may proceed to conduct its own evaluation into the state legislature's intent.[7]  *Cf. Banner*, 886 F.2d at 782 (holding that federal habeas courts confronted cumulative-punishment claims may interpret the

---

[7] Anecdotally, it is not entirely clear how a federal habeas court should go about interpreting state legislative intent when the state courts have not done so.  Warden Sheldon appears to advocate for the application of the "same elements" test that the U.S. Supreme Court announced in *Blockburger v. United States*, 284 U.S. 229, 304 (holding that, when interpreting **Congress's** intent regarding the merger of **federal** statutes, courts should look to "whether each provision requires proof of a fact which the other does not").  ECF Doc. 7 at 39.  But the U.S. Supreme Court and Sixth Circuit have cast doubt on whether *Blockburger* is applicable to state legislative intent.  *See Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984) (stating that, even when state law violations have the same elements under the *Blockburger* test, state legislative intent that the violations do not merge controls); *Banner*, 886 F.2d at 782 ("[W]e may not use the *Blockburger* test – a rule of statutory construction for federal statutes – to independently evaluate the scope of the Tennessee statutes here.").  Luckily, this Court need not reach that issue in this case because the Ohio Court of Appeals has interpreted the Ohio legislature's intent in enacting Ohio's merger law.

state legislature's intent only in "narrow situation[s] in which the state courts below ha[ve] failed to give a clear expression on the issue of cumulative punishment").

### 2. Cognizability

As one might expect, Double Jeopardy Clause jurisprudence presents a quagmire of cognizability problems, especially in the context of cumulative sentence challenges. And Robinson's Ground Four claim is no exception. Warden Sheldon presents a simple view – that Robinson's Ground Four claim is not cognizable because the issue of whether two sentences may be imposed for the same act presents an issue of state legislative intent and AEDPA requires federal habeas courts to defer to state court interpretations of state law. ECF Doc. 7 at 39. Warden Sheldon cites *Volpe* to support that view. *Id.* Unfortunately for Warden Sheldon, AEDPA Double Jeopardy Clause jurisprudence is not so simple. And *Volpe* **does not** say what the warden claims. If anything, *Volpe* indicates that – even though a federal habeas court must defer to a state court's interpretation of state legislative intent – a challenge to cumulative sentences for unmerged convictions *is* cognizable on federal habeas review. *Cf. Volpe*, 708 F.3d at 695-704 (stating that "Volpe timely filed this habeas action, raising the double jeopardy claim that she exhausted in state court," laying out the deferential standard, and considering the claim on the merits). Although it is true that a federal habeas court must defer to state courts' interpretations of state law, *Volpe* appears to instruct that the deference is given *during* the court's review on the *merits* of the double jeopardy claim. Thus, AEDPA's deference requirement does not render Robinson's double jeopardy claim noncognizable.

On the other hand, state legislative intent is a matter of state law. *Cf. Banner*, 886 F.2d at 780 ("[T]he district court was obligated to honor the construction of the majority of judges [of the state appellate court on this question of Tennessee law," *i.e.* the state legislature's intent).

25

Therefore, a standalone challenge to the state courts' interpretation of the state legislature's intent, unfiltered through the lens of a double jeopardy claim, is not cognizable on federal habeas review. *See Swarthout*, 562 U.S. at 219; *cf. Banner*, 886 F.2d at 780; *Bradshaw*, 546 U.S. at 76. Thus, if Robinson were attempting to present a standalone challenge to the Ohio Court of Appeals' interpretation of the Ohio legislature's intent, his Ground Four claim would be non-cognizable.

Nevertheless, because Robinson's Ground Four claim invokes the Double Jeopardy Clause and does not appear to be a standalone challenge to the state courts' interpretation of state law, I recommend that the Court proceed to the merits of Robinson's claim.

### 3.  Merits

Here, the legislative intent inquiry is not difficult.  The Ohio Court of Appeals – on Robinson's direct appeal –interpreted whether the Ohio legislature intended for aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(3) to merge with felony murder and in violation of Ohio Rev. Code §§ 2903.02(B) under the circumstances presented. *See State v. Robinson*, No. 99917, 2014-Ohio-2973, at ¶¶52-57 (Ohio Ct. App. 2014); ECF Doc. 7-1 at 120-23.  Specifically, the Ohio Court of Appeals – applying Ohio's merger statute (Ohio Rev. Code § 2941.25) as the test for legislative intent – determined that the convictions were not among those that the Ohio legislature intended to merge and that cumulative sentences were permitted. *See State v. Robinson*, No. 99917, 2014-Ohio-2973, at ¶¶52-57 (Ohio Ct. App. 2014); ECF Doc. 7-1 at 120-23.  The court of appeals focused upon the defendant's conduct, as required by Ohio case law interpreting the Ohio allied offense statute's application.  It noted that when the evidence showed that the force used to effectuate the aggravated robbery was far in excess of what was needed to complete an aggravated robbery or when the circumstances suggested a

separate intent to kill existed then the offenses of aggravated robbery and murder would not merge.  *Id.* at ¶ 56.  In reviewing the evidence, the court of appeals indicated that Morgan was beaten until unconscious and then was repeatedly kicked thereafter.  *Id.* at ¶ 57.  And property was not taken from Morgan's pockets until after he appeared to be dead.  *Id.*  The court of appeals concluded from this evidence that the offenses would not merge because they were not allied offenses of similar import.  *Id.*  The Ohio Supreme Court did not disturb that interpretation.  *See State v. Robinson*, No. 2014-1442, 2015-Ohio-239 (2015); ECF Doc. 7-1 at 179.

This court is required to follow the Ohio courts' interpretation of Ohio law, even though it was given on Robinson's direct appeal.  *Volpe*, 708 F.3d at 697; *Banner*, 886 F.2d at 780; *Bradshaw*, 546 U.S. at 76.  Thus, because the application of the statutory scheme enacted by the Ohio legislature did not intend for Robinson's aggravated robbery conviction to merge with his murder conviction, and therefore intended to permit multiple sentences, Robinson's cumulative sentences did not violate the Double Jeopardy Clause.  *Volpe*, 708 F.3d at 696-97.

I recommend that the Court deny Robinson's Ground Four claim on the merits.

## VII.  Recommendations

Robinson's two remaining claims both fail and should be dismissed for the following reasons: The Ground Two claim was procedurally defaulted, in part, and otherwise raised no cognizable federal issue.  The Ground Two claim would also fail on the merits.  The Ground Four claim, even if considered to raise a cognizable issue, fails on the merits.  Robinson's Ground One and Ground Three claims should be dismissed after having been withdrawn.

## VIII.   Certificate of Appealability

Before a habeas petitioner may appeal the denial of his petition, a judge must first specify the issues that can be raised on appeal in a "certificate of appealability."  28 U.S.C. § 2253(c). For a certificate of appealability to issue, the "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting (*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  If, however, the petition was dismissed on a procedural basis, the petitioner must show that reasonable jurists would find debatable whether: (1) the petition states a valid claim of the denial of a constitutional right; and (2) the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 485.  When "a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 486.  If the Court accepts my recommendations, Robinson will not be able to show that the Court's rulings on his procedurally defaulted, non-cognizable, and meritless claims are debatable.  Thus, I recommend that a certificate of appealability not be issued.

Dated: January 6, 2020

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).